UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| ELIZABETH M. WREDE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:16-CV-144-CCS |
| | ) | |
| WILLIAM E. CARTER, JR., and ALLISON LEE PILCHARD, | ) ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM AND ORDER

This case is before the undersigned pursuant to 28 U.S.C. § 636(c), Rule 73(b) of the Federal Rules of Civil Procedure, and the consent of the parties, for all further proceedings, including entry of judgment [Doc. 12].

Now before the Court is Defendant William Carter, Jr.'s Motion for Summary Judgment [Doc. 36] and Defendant Allison Lee Pilchard's Motion for Summary Judgment [Doc. 39]. The parties appeared before the Court on December 1, 2016, for a motion hearing. For the reasons explained below, the Court finds Defendant Carter's Motion for Summary Judgement [**Doc. 36**] to be **GRANTED IN PART AND DENIED IN PART** and Defendant Pilchard's Motion for Summary Judgement [**Doc. 39**] to be **DENIED**.

### I. BACKGROUND

Unfortunately, this case involves a sibling dispute over the assets of their deceased mother. The relevant and undisputed facts are as follows: [1]

---

[1] The following facts are taken from the agreed upon portions of Defendant Carter's Statement of Undisputed Facts and the attached documents thereto.

Defendant Carter is the son of Mrya L. Kravetaz ("Grantor") and Allison Pilchard and Elizabeth Wrede are the Grantor's daughters. [Doc. 38 at 1]. The Grantor settled the Mrya K. Kravetz Family Trust on February 16, 2004 ("Trust"). Id. Pursuant to the terms of the Trust, the Grantor had the right to amend, modify, or revoke the Trust Declaration during her lifetime in whole or in part "without the consent of any beneficiary and without giving notice to any beneficiary hereunder, by a writing signed and acknowledged by the Grantor, to be effective upon delivery to the Trustee." [Doc. 38-1 at 14]. Upon the Grantor's death, the Trust Declaration "shall become irrevocable and not subject to amendment." [Doc. 38-1 at 11]. The Grantor nominated Defendant Carter to serve as the First Alternate Successor Trustee of the Trust after her death. [Doc. 38-1 at 14]. Pursuant to Article IV of the Trust, after the Grantor's death and the payment of expenses of any last illness and funeral costs, "all of the personal property in the trust estate then in the possession of the successor trustee or contingent successor trustee shall be sold and all of the net funds of the sale shall be distributed by the trustee free of the trust to all of the contingent beneficiaries as named below share and share alike." [Doc. 38-1 at 11]. Further, Article V provides as follows:

> If any of the named beneficiaries desires to keep any personal property item of the trust estate, that beneficiary may do so by having the value of that personal property item deducted from that persons' share of the net funds of the estate. In the event that two or more beneficiaries desire the same item and they cannot agree on the price and/or who shall have said item, then that item shall be sold and the funds distributed in the estate.

[Doc. 38-1 at 12]. The parties are the contingent beneficiaries of the Trust. [Doc. 38-1 at 11]. Finally, the Trust Declaration states, "This Declaration of Trust shall be administered and interpreted in accordance with the laws of the State of California." [Doc. 38-1 at 16].

At the time she settled the Trust, the Grantor also executed the Last Will and Testament of Myra L. Kravetz ("Will"). [Doc. 38-1 at 96-97]. The Grantor nominated Defendant Carter as the Executor of the Will, and she devised and bequeathed her entire estate, whether real property or personal property, "to be held, managed, and disposed of in accordance with the provisions of" the Trust. [Doc. 38-1 at 96].

Three days after she settled the Trust and executed the Will, the Grantor also signed a one-page document identifying certain items of tangible personal property ("Memorandum"). [Doc. 38-1 at 99]. Specifically, with respect to "Liz," the Memorandum states, "Remainder of contents in the home." [Doc. 38-1 at 99]. The parties dispute as to whether the Memorandum is a valid document. The parties do not dispute, however, that the Trust Declaration does not reference any tangible personal property memorandum or direct the successor Trustee to follow any such memorandum. [Doc. 38 at 4].

On December 17, 2014, the Grantor died from carbon monoxide toxicity which she suffered in a fire at her home in Knoxville. [Doc. 38 at 4]. The fire caused significant damage to the house and the tangible personal property found inside. Id. Between December 20 and 22, 2014, the Defendants and the Plaintiff's husband met at the house to view the damage and to begin to sort through the contents. Id. at 6. In addition, ServPro took various items of tangible personal property from the house into its possession in an effort to clean and salvage them. Id. at 7. An Allstate claims adjuster prepared an inventory of the items of tangible personal property from the house that could not be cleaned or salvaged and which would be paid as a casualty loss. Id.

Later, Defendant Carter arranged to meet with ServPro at its facility in Knoxville on January 24, 2015, to receive the cleaned items of tangible personal property and distribute them among the contingent beneficiaries. Id. Defendant Carter contacted the Plaintiff via text message

3

on January 14, 2015, and asked if she was available to meet and review the items of tangible personal property. Id. at 7-8. The Plaintiff agreed to the meeting. Id. at 8.

Subsequently, however, on January 15, 2015, the Plaintiff became ill and entered the hospital. Id. The Plaintiff contacted a representative with ServPro on or about January 23, 2015, and informed the representative that she could not attend the meeting the following day. Id. The ServPro representative contacted Defendant Carter while he was traveling from Indiana to Tennessee and could only inform him that one of his sisters was ill and could not attend the meeting and asked for instructions. Id. There is a dispute as to whether Defendant Carter attempted to contact the Plaintiff. Id. see also [Doc. 47 at 6]. In any event, Defendant Carter proceeded with the scheduled meeting at the ServPro facility. Id. at 9. Following the January 24 meeting, various disputes arose between the Plaintiff and Defendant Carter concerning Defendant Carter's administration of the Trust. Id.

The Complaint was originally filed in Knox County Chancery Court but removed [Doc. 1] on March 28, 2016, and later amended [Doc. 23] on August 29, 2016. The Amended Complaint alleges that Defendant Carter failed to perform duties incumbent upon him as the Trustee of the Myra L. Kravetz Family Trust. Specifically, the Plaintiff alleges that Defendant Carter failed and refused to provide a full and complete record and accounting of his actions as the Trustee, failed and refused to include all the assets that must be included in the Myra L. Kravetz Family Trust, failed to serve as Trustee in a neutral manner, and depleted and wrongfully spent Trust assets in favor of those who were not entitled to those assets. In addition, the Plaintiff alleges that Defendant Pilchard served as an agent of the Trust when Defendant Carter had to leave town and that during the time she served as an agent, she removed property that belonged to the Plaintiff and made distribution of items without the Plaintiff's consent or knowledge. The Amended Complaint also

4

alleges that on or about January 24, 2015, the Defendants met with ServPro and removed items that had been cleaned or restored without the Plaintiff's knowledge or consent.

The Amended Complaint states that the Defendants' actions were grossly negligently, intentional, and designed to defraud the Plaintiff of assets to which she is entitled to under the Trust. The Plaintiff requests that Defendant Carter be removed as the Trustee and that he and Defendant Pilchard provide an accounting of their activities as Trustees. Further, the Amended Complaint requests compensatory and punitive damages and attorney's fees and expenses.

## II.  POSITIONS OF THE PARTIES

Both Defendants have moved for summary judgement. With respect to Defendant Carter's Motion [Doc. 36], he asserts that the Profit and Loss Detail is true and accurate and that he included all assets in the Trust. Defendant Carter states that the Memorandum is not a valid amendment to the Trust. Further, Defendant Carter submits that the inventories account for all of the Trust's tangible personal property. Defendant Carter also argues that he treated the contingent beneficiaries in a neutral manner and that he administered the real property properly. Finally, Defendant Carter argues that the Plaintiff has not suffered any damages.

The Plaintiff filed a Response [Doc. 45] arguing that the Profit and Loss Detail is not true and accurate. For instance, the Plaintiff argues that the items placed in Defendant Carter's and Defendant Pilchard's vehicles have never been accounted.  The Plaintiff also argues that Defendant Carter paid Defendant Pilchard's travel expenses with the Trust money and for refurbishing the personal property.  In addition, the Plaintiff asserts that Defendant Carter did not include all the assets in the Trust. The Plaintiff asserts that each child was given a copy of the Memorandum and each child knew the purpose of the Memorandum. The Plaintiff argues that Defendant Carter refused to follow the Memorandum. Further, the Plaintiff asserts that Defendant Carter did not

5

treat the beneficiaries in a neutral manner. The Plaintiff states that Defendant Pilchard was treated more favorably. Finally, the Plaintiff asserts that she has suffered damages.

With respect to Defendant Pilchard's Motion [Doc. 39], she asserts that the Plaintiff has no evidence that she (Defendant Pilchard) possesses or received any property (fraudulently or otherwise) that belongs to the Plaintiff and that summary judgment is appropriate. Further, Defendant Pilchard asserts that the Plaintiff has no evidence that she (Defendant Pilchard) served as a trustee of the Trust.

The Plaintiff filed a Response [Doc. 46] asserting that Defendant Pilchard is not entitled to summary judgement in this action because she received property from the Trust that has not been inventoried or provided a value. The Plaintiff argues that Defendant Pilchard placed personal property in totes in December 2014 and took the items with her. The Plaintiff also argues that Defendant Pilchard received items from ServPro in January 2015 without the Plaintiff's consent and that Defendant Pilchard did not assess a value to those items, which would be deducted from her share of the net proceeds of the Trust.

### III. STANDARD OF REVIEW

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. Celotex Corp. v. Catrett, 477 U.S. 317, 330 n. 2 (1986); Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 339 (6th Cir. 1993). All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Burchett v. Kiefer, 301 F.3d 937, 942 (6th Cir. 2002).

"Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." Curtis v. Universal Match Corp., 778 F. Supp. 1421, 1423 (E.D.Tenn.1991) (citing Celotex, 477 U.S. at 317). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. Id.

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the finder of fact. Anderson, 477 U.S. at 250. The Court does not weigh the evidence or determine the truth of the matter. Id. at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479-80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson, 477 U.S. at 250.

### IV. ANALYSIS

The Court has considered the oral arguments presented at the hearing and the briefing filed in this case. For the reasons more fully explained below, the Court will deny, in part, Defendant Carter's Motion for Summary Judgement and deny Defendant Pilchard's Motion for Summary Judgment.

*(a) Defendant Carter's Motion for Summary Judgement*

7

Defendant Carter maintains that the Trust Declaration gives him authority to act as a successor Trustee and to act for the benefit of the contingent beneficiaries. Moreover, he argues that the Trust Declaration provides the sole guide in administering the Trust. He asserts that the Memorandum is not valid because it was not notarized as required by the Trust Declaration. The Plaintiff responds that the Grantor's intent is clear because each child was given a copy of the Memorandum and each child knew of its purpose.

As an initial matter, the Trust Declaration provides that it shall be interpreted in accordance with California law, and therefore, the Court will look to California law in its analysis. Pursuant to § 15402 of the California Probate Code, "Unless the trust instrument provides otherwise, if a trust is revocable by the settlor, the settlor may modify the trust by the procedure for revocation." California courts have interpreted this section to mean that "if any modification method is specific in the trust, that method must be used to amend the trust." King v. Lynch, 204 Cal. App. 4th 1186, 1193 (2012).

Here, the Trust Declaration states that the Grantor "reserves the right during her lifetime to amend, modify or revoke this Declaration of Trust agreement in whole or in part . . . by a writing or writings signed and acknowledged by the Grantor, to be effective upon delivery to the Trustee." [Doc. 38-1 at 14]. As noted in Defendant Carter's brief, however, "When interpreting a testamentary instrument, courts are to give the provisions 'a liberal and reasonable interpretation rather than a narrow and technical one, with a view to discovering the decedent's testamentary intent, and the apparent meaning of particular words, phrases and provisions is to be subordinated to the testor's plan or dominate purpose.'" [Doc. 37 at 13] (quoting In re Estate of Cairns,188 Cal. App. 4th 937, 947-48 (2010) (other citations omitted)). The Plaintiff insists that Defendant Carter knew of the Grantor's intent with respect to the Memorandum, while Defendant Carter insists that

8

the directions for modification in the Trust Declaration were not followed. At this point, the Court finds that it has insufficient information to determine the validity of the Memorandum what, if any, interpretation it is to be given, and the decedent's intent. Because the trial is a bench trial, the Court will entertain further argument and/or evidence as to validity or invalidity of the Memorandum at the trial.

Moreover, the Plaintiff asserts that even if the Memorandum is not valid, Defendant Carter failed to follow the directions with respect to personal property that are provided in the Trust Declaration. As noted above, Article IV provides that "all of the personal property in the trust estate then in the possession of the successor trustee or contingent successor trustee shall be sold and all of the net funds of the sale shall be distributed" to the contingent beneficiaries. Article V states as follows:

> If any of the named beneficiaries desires to keep any personal property item of the trust estate, that beneficiary may do so by having the value of that personal property item deducted from that persons' share of the net funds of the estate. In the event that two or more beneficiaries desire the same item and they cannot agreed on the price and/or who shall have said item, then that item shall be sold and the funds distributed in the estate.

Reading Articles IV and V together, it is clear that the personal property is to be sold and the profits divided equally between the beneficiaries. If a beneficiary keeps a personal property item, then the value of that item is to be deducted from the beneficiary's net funds. During the hearing, Defendant Carter agreed that Article V of the Trust Declaration provided the directions on how to distribute property, and he acknowledged that he did not follow the terms of the Trust. He argued, however, that under the circumstances, he acted in a reasonable matter. Accordingly, the Court finds that what effect Defendant Carter's failure to follow the terms of the Trust has on the respective distributions, the extent to which this directive can still be accomplished (in whole

9

or in part), whether acting in a reasonable manner is a legitimate excuse, and whether he acted in a reasonable manner under the circumstances are genuine issues of material fact.

Moreover, Defendant Carter argues that he treated the contingent beneficiaries in a neutral manner. The Plaintiff argues that he treated Defendant Pilchard more favorable in violation of his duty to the Plaintiff. Specifically, the Plaintiff alleges that Defendant Carter allowed Defendant Pilchard to choose whatever property she wanted without the Plaintiff's input or agreement.

Pursuant to § 16003 of the California Probate Code, "If a trust has two or more beneficiaries, the trustee has a duty to deal impartially with them and shall act impartially in investing and managing the trust property, taking into account any differing interests of the beneficiaries." The parties do not dispute that a meeting with ServPro occurred without the Plaintiff. During the meeting, Defendant Carter distributed items to Defendant Pilchard and to himself. He acknowledged at the hearing that pursuant to the Trust Declaration, this was not the correct method for distributing the Trust assets. Accordingly, the Court finds that whether Defendant Carter acted in a neutral manner is a genuine issue of material fact, not appropriate for summary judgment.

Defendant Carter asserts that the Plaintiff has not suffered any damages. The Plaintiff asserts loss of certain property and loss of use in the property because of the inequitable distribution. Accordingly, for the reasons cited above, the Court finds that the Plaintiff may present her damages, if any, at trial.

Finally, at the hearing, the Plaintiff acknowledged that she did not have an income loss claim or an emotional damages claim and that she no longer questioned the accuracy of the numbers provided in the Profit and Loss Detail, although she objected to four expenses: (1) furniture restoration; (2) travel expenses; (3) yardwork; and (4) Defendant Carter's attorney's

expenses. The Court will determine whether Defendant Carter breached his fiduciary duty with respect to the four expenditures at trial, but the claims regarding income loss claim, emotional damages, and the accuracy of the Profit and Loss Detail are hereby **DISMISSED**. The Plaintiff also acknowledged that the sale of the real property was fair. Accordingly, the Court will **DISMISS** the Plaintiff's allegation that the sale of the Knoxville real property was not fair.

In addition, although not stated in the Complaint, Defendant Carter argues that the Plaintiff alleged at one point that she was entitled to financial support given to the Grantor. The Court finds that there is no need to address Defendant Carter's argument that the Plaintiff is not entitled to financial support because the allegation was not made in the Complaint, nor did the Plaintiff respond to it in her brief. No claim will be allowed for alleged financial support by Plaintiff to her mother, the Grantor.

*(b) Defendant Pilchard's Motion for Summary Judgement*

Defendant Pilchard argues that summary judgment is appropriate because the Plaintiff has no evidence that she (Defendant Pilchard) possesses or received any property (fraudulently or otherwise) that belongs to the Plaintiff. The Plaintiff argues that Defendant Pilchard placed personal property in totes and left the State with the items. The Plaintiff states that such items were not inventoried or valued pursuant to the directions in the Trust Declaration. Accordingly, the Court finds that whether Defendant Pilchard took property that did not belong to her is a genuine issue of material fact.

In addition, Defendant Pilchard argues that the Plaintiff has no evidence that she (Defendant Pilchard) served as trustee. As evidence, Defendant Pilchard emphasizes Plaintiff's deposition testimony that the Plaintiff never saw any documents appointing Defendant Pilchard as an interim trustee. The Court finds Defendant Pilchard's argument not well-taken. The Plaintiff

states that her husband was told by the Defendants that Defendant Pilchard would be serving as Trustee when Defendant Carter had to leave the State. Moreover, the Trust Declaration states, "If William E. Carter, Jr., is unable to serve as the Successor Trustee, *for any reason*, Allison L. Pilchard shall serve as Contingent Successor Trustee." [Doc. 38-1 at 14] (emphasis added). Accordingly, there does not appear to be any requirement of a writing in order to serve as contingent successor trustee, and whether Ms. Pilchard did so, and whether she acted appropriately in such capacity are questions and issues of material fact, and thus, the Court denies Defendant Pilchard's Motion.

## V. CONCLUSION

For the reasons explained above, the Court finds Defendant Carter's Motion for Summary Judgement **[Doc. 36]** to be **GRANTED IN PART AND DENIED IN PART** and Defendant Pilchard's Motion for Summary Judgement **[Doc. 39]** to be **DENIED**. The Court **DISMISSES** the Plaintiff's claims regarding income loss, emotional damages, allegations regarding the sale of the Knoxville real property, and allegations regarding the Profit and Loss Detail's inaccuracy. The parties shall proceed to trial before this Court on **January 31, 2017.**

**IT IS SO ORDERED**.

ENTER:

    s/ C. Clifford Shirley, Jr.
United States Magistrate Judge